IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**JOHN FERNANDEZ,**<br>**AVAIL PROGRESSION, LLC, and**<br>**ELITE GENERATORS, INC.,** )<br>)<br>)<br>)<br>Defendants. )<br>)<br>) | Civil Action No. 4:22-cv-4365<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") alleges:

### NATURE OF THE ACTION

1. Between February 2017 and October 2021, John Fernandez, a self-professed foreign exchange ("forex") trading expert, raised over $4.3 million from approximately 175 investors through the sale of securities offered by two companies he controls – Avail Progression, LLC ("Avail Progression") and Elite Generators, Inc. ("Elite Generators"). Fernandez and his companies promised to pay investors guaranteed returns by trading their funds in the forex markets, but Fernandez instead used the majority of the investor funds to make Ponzi payments and for his own personal expenses.

2. Through their actions, Defendants violated, and unless enjoined will continue to violate, the antifraud provisions of the federal securities laws, namely Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15

U.S.C. § 77q(a)]. Additionally, Defendants violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)] by selling unregistered securities.

3. To protect the public from further fraudulent activity, the SEC brings this action against Defendants and seeks: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten gains, plus prejudgment interest; and (iii) civil penalties.

## DEFENDANTS

4. **John Fernandez** is 26 years old and resides in Houston, Texas. He is the founder, manager, and CEO of Avail Progression and Elite Generators. Fernandez claims to be a self-taught day-trader who focuses on trading in the foreign exchange market ("forex").

5. **Avail Progression, LLC** is a Texas limited liability company established in February 2017. Fernandez is Avail Progression's founder, manager, and CEO.

6. **Elite Generators, Inc.** is a Texas corporation established in July 2019. Fernandez is the founder, manager, and CEO of Elite Generators.

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

8. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

9. Fernandez and Avail Progression raised $1.5 million by selling so-called "promissory notes." Fernandez and Elite Generators raised an additional $2.8 million by selling "investment contracts." Both the Avail Progression promissory notes and the Elite Generators

investments contracts are securities because they fall under the description of notes and investments contracts, respectively, under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)] and relevant precedent.

10. In connection with the conduct described in this Complaint, Defendants, directly or indirectly, made use of the mails or the means or instruments of transportation or communication in interstate commerce by, among other means, soliciting investments via the internet and accepting investor deposits via wire transfer.

11. Venue is proper in this District because, at all relevant times, Defendants were located, and conducted business, in this District, and Fernandez resided in this District. Further, acts, transactions, and courses of business constituting violations of the federal securities laws alleged in this Complaint occurred within this District, including but not limited to Defendants' solicitations of investors and the acceptance and disbursement of investor funds.

## FACTUAL ALLEGATIONS

**I.    Avail Progression**

12. From February 2017 to summer 2019, Fernandez and Avail Progression raised $1.5 million from approximately 90 investors. Fernandez and Avail Progression required investors to execute a document (drafted by Fernandez) titled "PROMISSORY NOTE," which outlined the terms of the investment. The note listed the date of the initial investment, the amount of monthly return, and the dates upon which returns would be paid.

13. In soliciting potential investors via email, Fernandez and Avail Progression touted his superior trading abilities and highly specialized skill set, informing investors they would receive "guaranteed interest every month." In addition, when Avail Progression personnel

communicated with potential investors in emails, they pitched Avail Progression as a "financial growth company" that will "pay a percentage of guaranteed interest residually."

14. Despite representing to investors and potential investors that he would trade in forex, Fernandez did not use any of the investor funds raised during the Avail Progression offering for forex trading, as promised. Instead, Fernandez deposited approximately $281,000 of the $1.5 million raised into an account at Coinbase – a platform used exclusively for crypto asset trading, not forex trading. Even then, Fernandez conducted minimal crypto asset trading. Further, Fernandez used at least $290,000 of investor funds to pay his own personal expenses. Fernandez also paid at least $836,000 back to investors from commingled investor funds, the majority of which were Ponzi payments to create the illusion of successful trading.

15. At all times, Fernandez controlled the Avail Progression bank accounts, where he commingled investor funds with his personal funds.

16. Fernandez promised investors (in emails sent at least through August 2017), that Avail Progression would send investors "documentation of portfolios, bank statements, and history of company growth." Instead, Fernandez and Avail Progression regularly deceived investors by showing them, and also sending via email, screenshots of a forex trading tracker website he had manipulated to show purported gains from trading that had not occurred.

17. By spring 2019, Fernandez had spent all of the investor funds. Fernandez stated to his assistant, who nominally held the title of Chief Operating Officer of Avail Progression, that Fernandez had to restart the company because he owed "a million" in taxes. Shortly thereafter, Avail Progression told investors that the company was winding down because of a "tax blowback." Avail Progression asked investors via email to "roll over" their investments to Elite Generators, which the Avail Progression email described as a "legitimate financial

company."

18. Of the approximately 90 existing Avail Progression investors, approximately 40 became Elite Generators investors, agreeing to end their contracts with Avail Progression and receive lower monthly returns from Avail Progression between May and July 2019. In total, Avail Progression owed the transitioning investors approximately $850,000 in interim monthly payments – which Fernandez paid by soliciting, and obtaining investments from, new (Elite Generators) investors. Further, Avail Progression failed to pay the promised monthly returns to the 50 other investors that did not agree to transition their outstanding accounts to Elite Generators.

## II.    Elite Generators

19. In July 2019, Fernandez formally established Elite Generators, advertising the company on social media, including Instagram and LinkedIn, as a financial investment firm. The company's LinkedIn profile claimed to "guarantee over 50% growth annually" by managing investor funds in the forex markets. Fernandez promoted Elite Generators through social media postings, email blasts, online message boards, and in face-to-face meetings – telling potential investors that Elite Generators would guarantee returns ranging from 5-100% based solely on his forex trading skills. Fernandez also touted a three-year proven track record although Elite Generators was a newly formed company and his previous company had only a track record of fraud and failure.

20. Fernandez and Elite Generators required investors to execute an "Investment Contract," which listed the investment amount, the amount of the returns, and the dates on which the investors would receive their returns, as well as other basic contractual terms related to late fees and non-payment. Notably, the Investment Contract allowed that Elite Generators "may

utilize the investment amount for any reason; in any case, it is the parties' desire and goal that the investee [Elite Generators] will utilize the investment amount for money producing investments."

21.     While soliciting investors, however, Fernandez represented that he would use investor funds to trade on the forex market and provide guaranteed returns.  At no time did Fernandez reveal to potential Elite Generators investors that the similarly structured Avail Progression had been a sham.

22.     Fernandez controlled the Elite Generators bank accounts and regularly commingled investor funds with his personal funds and funds from other sources, including third party lenders and Coinbase.

23.     From July 2019 to October 2021, Elite Generators raised $2.8 million from over 100 investors.  Of this amount, Fernandez and Elite Generators deposited only $93,000 in accounts on forex trading platforms.  Instead, Fernandez spent approximately $1.8 million of the commingled investor funds to make Ponzi payments and used a majority of the remaining funds to sustain his personal lifestyle.

24.     In September 2019, because he was not trading and, therefore, not generating returns for investors, Fernandez resorted to obtaining payday loans to pay promised returns to investors – borrowing over $474,000 at exorbitant interest rates as high as 38%.  Fernandez never alerted current or prospective investors to this development or to the fact that the returns were not sourced from forex trading activities.

25.     By October 2021, Fernandez had stopped all trading activities and ceased making payments to Elite Generators' investors.  When investors sought overdue returns, Fernandez offered a litany of excuses, including "car troubles," a failed wedding engagement, and a

6

temporarily frozen trading account.  Fernandez eventually stopped even returning investor calls and Elite Generators has no current assets or operations.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

26. Plaintiff re-alleges and incorporates paragraphs 1 through 25 of this Complaint by reference as if set forth verbatim in this Claim.

27. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in connection with the purchase or sale of a security, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

   a. employed a device, scheme, or artifice to defraud; and/or

   b. made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

   c. engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

28. By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

29. Plaintiff re-alleges and incorporates paragraphs 1 through 25 of this Complaint by reference as if set forth verbatim in this Claim.

30. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in the offer or sale of a security, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

   a. knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

   b. knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c. knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

31. By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]**

32. Plaintiff re-alleges and incorporates paragraphs 1 through 25 of this Complaint by reference as if set forth verbatim in this Claim.

33. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly:

   a. made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

   b. for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

   c. made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

34. By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

1. Permanently enjoining Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

2. Permanently enjoining Defendant Fernandez from directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, offer, purchase, or sale of any security, provided, however, that such injunction shall not prevent Defendant Fernandez from purchasing or selling securities for his own personal account;

3. Permanently enjoining Defendant Fernandez from serving as an officer or director of any issuer required to file reports with the SEC under Section 12(b), 12(g), or 15(d) of the Exchange Act [15 U.S.C. §§ 78l(b), 78l(g), and 78o(d)] pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

4. Ordering the Defendants to disgorge ill-gotten gains as a result of the violations alleged herein, pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) & 78u(d)(7)], plus prejudgment interest thereon;

5. Imposing civil penalties against Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein;

6. Imposing such other and further relief as the Court may deem just and proper.

Dated:  December 16, 2022    Respectfully submitted,

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

/s/ Matthew J. Gulde
Matthew J. Gulde
Illinois Bar No. 6272325
S.D. Texas Bar No. 1821299
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  (817) 978-1410
Facsimile:  (817) 978-4927
guldem@sec.gov

*Attorney for Plaintiff*