IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 4:22-cv-4365 |
| | ) |
| v. | ) |
| | ) |
| **JOHN FERNANDEZ,** | ) |
| **AVAIL PROGRESSION, LLC, and** | ) |
| **ELITE GENERATORS, INC.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MOTION FOR MONETARY REMEDIES AND ENTRY OF FINAL
<u>JUDGMENT AS TO ALL DEFENDANTS AND BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

I.   PROCEDURAL BACKGROUND ........................................................................... 1

II.  FACTUAL SUMMARY .......................................................................................... 2

III. ARGUMENT ............................................................................................................ 4

    A.   The Court Should Order the Defendants to Pay, Jointly and Severally, Disgorgement and Prejudgment Interest ....................................................... 4

    B.   The Court Should Impose a Third Tier Civil Penalty Against Fernandez ................................................................................... 10

    C.   Plaintiff Requests That the Court Enter the Proposed Final Judgment against Defendants .................................................................................... 13

IV. CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Liu v. SEC*,
   591 U.S. 71 (2020) ................................................................................................. 4, 5

*SEC v. AMX, Int'l*,
   7 F.3d 71 (5th Cir. 1993) ..............................................................................................5

*SEC v. First City Fin. Corp.*,
   890 F.2d 1215 (D.C. Cir. 1989) ................................................................................ 5-6

*SEC v. Gilman*,
   No. 3:18-CV-1421-L, 2021 WL 4125195 (N.D. Tex. Sept. 9, 2021) ...........................2

*SEC v. Greenview Inv. Partners, L.P.*,
   No. 3:18-CV-2349-G, 2020 WL 973750 (N.D. Tex. Jan. 2, 2020) ..............................9

*SEC v. Gunn*,
   No. 3:08-CV-1013, 2010 WL 3359465 (N.D. Tex. Aug. 25, 2010) ............................9

*SEC v. Halek*,
   537 F. App'x 576 (5th Cir. 2013) ............................................................................ 8, 9

*SEC v. Hallam*,
   42 F.4th 316 (5th Cir. 2022) .........................................................................................5

*SEC v. Helms*,
   No. A-13-CV-01036 ML, 2015 WL 5010298 (W.D. Tex. Aug. 21, 2015) .......... 5, 11

*SEC v. JT Wallenbrock & Assocs.*,
   440 F.3d 1109 (9th Cir. 2006) ......................................................................................2

*SEC v. Kenton Capital, Ltd.*,
   69 F. Supp. 2d 1 (D.D.C. 1998) .................................................................................10

*SEC v. Kern*,
   425 F.3d 143 (2d Cir. 2005) .......................................................................................11

*SEC v. McClintock*,
   No. 1:12-CV-04028-SCJ, 2015 WL 12696101 (N.D. Ga. Oct. 28, 2015) ........... 12-13

*SEC v. Moran*,
   944 F. Supp. 286 (S.D.N.Y. 1996) .............................................................................10

*SEC v. Morris*,
   No. 3:20-CV-02958-B, 2022 WL 9497046 (N.D. Tex. Oct. 14, 2022) .......................5

*SEC v. Offill*,
   No. 3:07-CV-1643-D, 2012 WL 1138622 (N.D. Tex. Apr. 5, 2012) ........................11

*SEC v. Patel*,
  61 F.3d 137 (2d Cir. 1995) ...................................................................................5, 8

*SEC v. Rockwell Energey of Tex., L.L.C.*,
  No. H-09-4080, 2012 WL 360191 (S.D. Tex. Feb. 1, 2012) .......................................5

*SEC v. Sethi Petrol., L.L.C.*,
  229 F. Supp. 3d 524 (E.D. Tex. 2017) ........................................................................8

*SEC v. Star Chain, Inc.*,
  No. 1:21-CV-03944-JPB, 2023 WL 1785764 (N.D. Ga. Feb. 3, 2023) ...................13

*SEC v. United Energy Partners, Inc.*,
  88 F. App'x 744 (5th Cir. 2004) .............................................................................8, 9

*SEC v. Universal Express, Inc.*,
  646 F. Supp. 2d 552 (S.D.N.Y. 2009) .......................................................................11

*SEC v. Voight*,
  No. H-15-2218, 2021 WL 5181062 (S.D. Tex. June 28, 2021) ............................5, 7

**Federal Statutes**

<u>Securities Act of 1933</u>

Section 17
  [15 U.S.C. § 77q] ....................................................................................................13

Section 20
  [15 U.S.C. § 77t] .....................................................................................................10

<u>Securities Exchange Act of 1934</u>

Section 10
  [15 U.S.C. § 78j] .....................................................................................................13

Section 12
  [15 U.S.C. § 78l] ........................................................................................................1

Section 15
  [15 U.S.C. § 78o] .......................................................................................................1

Section 21
  [15 U.S.C. § 78u] ...............................................................................................4-5, 10

*Federal Rules of Civil Procedure*

    Fed. R. Civ. P. 56 ................................................................................................. 2

**Other**

    17 C.F.R. § 201.1001 ..................................................................................... 10, 12

Plaintiff Securities and Exchange Commission (the "Commission" or the "SEC") submits this Motion for Monetary Remedies and Entry of Final Judgment as to Defendants John Fernandez, Avail Progression, LLC ("Avail Progression") and Elite Generators, Inc. ("Elite Generators") (collectively, "Defendants"). For the reasons discussed below, the Commission respectfully requests that the Court enter the attached proposed Final Judgment, which (1) incorporates provisions of the judgments the Court entered on April 19, 2023 (Docs. 16-18); (2) orders Defendants jointly and severally to pay disgorgement of $5,002,383 and prejudgment interest thereon of $1,291,419.26; and (3) orders Defendant Fernandez to pay a civil penalty of $472,902.

## I.
## PROCEDURAL BACKGROUND

The Commission filed its Complaint in this action on December 16, 2022, alleging that Defendants raised more than $4.3 million in a Ponzi scheme related to purported trades in the forex markets. *See* Doc. 1, Pl's Complaint.

Without admitting or denying the allegations in the Complaint, Defendants consented to the entry of judgments (the "Agreed Judgments"), which, among other things: (a) permanently enjoin Defendants from future violations of the federal securities laws as alleged in the Complaint; (b) permanently restrain and enjoin Fernandez from directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, offer, purchase, or sale of any security, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account; (c) permanently enjoin Fernandez from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15

U.S.C. § 78o(d)]; (d) order Defendants to pay disgorgement and prejudgment interest in amounts to be determined by the Court upon the Commission's motion; and (e) order Defendants to pay civil penalties in amounts to be determined by the Court upon the Commission's motion. *See* Docs. 16-18, Agreed Judgments; *see also* Doc. 15, Ex. A, Defs' Consents.

The Court entered the Agreed Judgments on April 19, 2023. Docs. 16-18. The only unresolved issue in this matter is the <u>amount</u> of disgorgement, prejudgment interest, and civil penalties Defendants will be ordered to pay. Pursuant to the Agreed Judgments, the Commission now moves to set the amount of disgorgement, prejudgment interest, and civil penalties. *See* Doc. 16, § VI; Doc. 17, § IV; Doc. 18, § IV. In determining this Motion, Defendants are precluded from arguing that they did not violate the federal securities laws and from challenging the validity of their Consents or the Agreed Judgments. Doc. 16, § VI; Doc. 17, § IV; Doc. 18, § IV.

## II.
## FACTUAL SUMMARY

Defendants have agreed that the allegations in the SEC's Complaint are accepted and deemed true for purposes of this Motion. Doc. 16, § VI; Doc. 17, § IV; Doc. 18, § IV; *see also SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1112 (9th Cir. 2006) (affirming district court's grant of disgorgement, prejudgment interest, and civil penalties where defendant previously consented to entry of permanent injunction and agreed not to contest or deny allegations in the SEC's complaint); *SEC v. Gilman*, No. 3:18-CV-1421-L, 2021 WL 4125195, at *6 (N.D. Tex. Sept. 9, 2021) (similar). They have similarly agreed that the Court may decide the Motion based on affidavits, declarations, excerpts of sworn deposition or investigative testimony, or other documentary evidence, without regard to the standards for summary judgment in Federal Rule of Civil Procedure 56(c). Doc. 15, Ex. A; Doc. 16, § VI; Doc. 17, § IV; Doc. 18, § IV. The SEC

therefore incorporates by reference the allegations in its Complaint as if fully set forth in this Motion. The SEC specifically directs the Court to Paragraphs 1 and 10-25 of the Complaint in particular, which provide a summary of the SEC's case. As detailed in those paragraphs:

- Between February 2017 and summer 2019, Fernandez and Avail Progression raised $1.5 million from approximately 90 investors, promising guaranteed monthly returns through Fernandez's trading on the forex market. Later, Fernandez, citing tax concerns, convinced approximately forty of these investors to roll over their investments to Elite Generators. From July 2019 to October 2021, Fernandez and Elite Generators raised $2.8 million from over 100 investors. Collectively, Fernandez raised over $4.3 million from approximately 175 investors through sales of securities offered by Avail Progression and Elite Generators;

- Defendants had investors in both Avail Progression and Elite Generators sign "promissory notes" or "investment contracts" that contained terms of the investment and identified the amounts of monthly returns promised to investors;

- Defendants solicited investor funds through email, social media, and face-to-face meetings. Defendants employed similar misrepresentations and omissions in their solicitations for investments in both Avail Progressions and Elite Generators, including statements that Fernandez would use the funds to trade in the forex market. Defendants touted Fernandez's purportedly superior trading abilities and promised investors would get "guaranteed interest every month";

- Contrary to these representations, Fernandez did not perform trading on the forex market. He instead used investor funds to make Ponzi payments and to sustain his personal lifestyle. The purported interest and principal paid to investors were Ponzi payments derived entirely from the funds of new investors;

- By engaging in this conduct, the Defendants violated the registration and antifraud provisions of the federal securities laws.

*See* Doc. 1, ¶¶ 1, 10-25.

The Complaint further alleges that, throughout the scheme, the Defendants acted with a high degree of scienter—knowingly or severely recklessly engaging in the fraudulent conduct. *See, e.g.*, Doc. 1, ¶¶ 14-17, 23-25, 27, 30. Among other acts, Defendants: (1) lied about how investor funds would be used; (2) misappropriated investor funds for use as Ponzi payments to

new and existing investors; (3) falsely promised returns ranging from 5% to 100% on investments; (4) disseminated false and misleading information to investors urging them to invest in what Defendants knew was a sham investment; (5) sent investors screenshots of a forex trading tracker website that had been manipulated to show purported gains from trading that had not occurred; and (6) failed to register Avail Progressions' and Elite Generators' securities offerings with the Commission or any state regulator. *See generally* Doc. 1, ¶¶ 14-25. In short, Defendants engaged in an egregious fraud scheme. They offered securities in the forms of promissory notes or investment contracts by employing a series of misrepresentations and omissions. *Id.* ¶¶ 12-14, 19-20. They then fraudulently misappropriated investor funds to make Ponzi payments and to pay for Fernandez's personal expenses. *Id.* ¶¶ 14, 23.

The Complaint alleges Defendants raised "over $4.3 million" from investors. *Id.* ¶ 1. The evidence proffered in support of this Motion demonstrates that the total is approximately $8.8 million and that Defendants' ill-gotten gains exceeded $5 million. Ex. A, Declaration of SEC Supervisory Staff Accountant Melvin Warren ("Warren Decl.") ¶ 14.

## III.
## ARGUMENT

**A.    The Court Should Order the Defendants to Pay, Jointly and Severally, Disgorgement and Prejudgment Interest.**

This Court may order disgorgement of Defendants' ill-gotten gains causally connected to their securities law violations. A disgorgement award "that does not exceed a wrongdoer's net profits and is awarded for victims" is permissible equitable relief under Section 21(d)(5) of the Exchange Act. *Liu v. SEC*, 591 U.S. 71, 74-75 (2020). Disgorgement is also authorized under amendments to the Exchange Act that Congress enacted after *Liu*. *See* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws,

the Commission may seek, and any Federal court may order, disgorgement."); 15 U.S.C. § 78u(d)(3)(A)(ii) (granting jurisdiction to "require disgorgement ... of any unjust enrichment by the person who received such unjust enrichment as a result of such violation."). The Fifth Circuit has stated that the new provisions "authorize legal 'disgorgement' apart from the equitable 'disgorgement' permitted by *Liu*." *SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022). But the Fifth Circuit also stated that the amendments "ratif[y] the pre-*Liu* disgorgement framework used by every circuit court of appeals." *Id.* at 338; *see also SEC v. Morris*, No. 3:20-CV-02958-B, 2022 WL 9497046, at *3-4 (N.D. Tex. Oct. 14, 2022) (discussing *Hallam*). In this case, any difference in approach between legal disgorgement and equitable disgorgement is immaterial.

The Court must order disgorgement "that does not exceed a wrongdoer's net profits" and excludes "legitimate expenses." *Hallam*, 42 F.4th at 342; *Liu*, 591 U.S. at 74, 91. Such exclusions would include offsets for amounts repaid to investors. *SEC v. Rockwell Energy of Texas, LLC*, No. 1:09-CV-4080-H, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012). The Court has broad discretion in determining the amount of disgorgement. *See, e.g.*, *SEC v. Helms*, No. 1:13-CV-01036, 2015 WL 5010298, at *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)).

Once the Commission presents evidence reasonably approximating the amount of ill-gotten gains, the burden of proof shifts to the Defendants. *Hallam*, 42 F.4th at 342. Defendants are then obliged to show "a clear break in or considerable attenuation of the causal connection between the illegality and the ultimate profits." *Hallam*, 42 F.4th at 342. Any risk of uncertainty in calculating disgorgement falls on the wrongdoer whose illegal conduct created the uncertainty. *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995); *SEC v. Voight*, No. H-15-2218, 2021 WL 5181062, at *7 (S.D. Tex. June 28, 2021) (quoting *SEC v. First City Fin'l Corp.*, 890 F.2d 1215,

1232 (D.C. Cir. 1989)).

Again, Defendants have each consented to the Agreed Judgments ordering them to disgorge all ill-gotten gains and to pay prejudgment interest on that amount. Doc. 15, Ex. A; Doc. 16, § VI; Doc. 17, § IV; Doc. 18, § IV. The Commission has determined the appropriate amount of disgorgement through a detailed review of the relevant financial records and the Defendants' own documents and accounting. Ex. A, Warren Decl. ¶¶ 5-8. Based on records the Commission obtained from Defendants, the banks where investor funds were deposited, and the crypto asset exchange on which Defendants received and transferred crypto assets, between approximately February 2017 and October 2021, Defendants raised $8,826,846 from investors in cash and crypto assets.[1] Ex. A, Warren Decl., ¶¶ 10-12. Of that $8,826,846, Defendants paid $3,731,326 to investors. *Id.* ¶ 14. Defendants also invested a small amount of investor funds ($93,137) on a forex trading platform, which was consistent with some of their representations that Fernandez would use the funds for forex trading. *Id.* ¶ 14; *see also* doc. 1, Compl. ¶¶ 14, 19. Adjusting for these payments to investors and funds used for forex trading, the total amount of ill-gotten gains Defendants received is $5,002,383. Ex. A, Warren Decl. ¶ 14.

| Description | Amount | Totals |
|---|---|---|
| Funds Raised by the Defendants (Bank Accounts) | $ 4,682,782 | |
| Coinbase Receipts (USD equivalent) | $ 4,144,064 | $ 8,826,846 |
| Less: | | |
| Investor Distributions (Bank Accounts) | $ (3,310,096) | |
| Investor Distributions (Coinbase) | $ (421,230) | $ (3,731,326) |
| Potential Forex Trading | | $ (93,137) |
| **Total Net Disgorgement** | | **$ 5,002,383** |

Figure 1, Disgorgement Calculation

---

[1] As explained in further detail below, the SEC infers that an amount of the crypto asset transfers into Defendants crypto wallets ($4,144,064) are investor funds and does not deduct $2,868,667 in crypto asset transfers out of Defendants' crypto asset accounts. Ex. A, Warren Decl. ¶¶ 12, 15.

Defendants should be ordered to disgorge this amount, which represents a reasonable approximation of the Defendants' net profits from the scheme. No affirmative evidence in the record disputes the reasonableness of this amount, and any risk of uncertainty should fall on Defendants, whose illegal conduct created the uncertainty. *Voight*, 2021 WL 5181062, at *7.

Defendants may contend that disgorgement should be reduced to account for certain deposits and payments Defendants received and made in crypto assets. As outlined in Warren's Declaration, a portion of the incoming transfers to Defendants' crypto wallets ($4,144,064) are from unidentified sources. Ex. A, Warren Decl. ¶ 12. There are also a number of outgoing transfers ($2,868,667) from Defendants' crypto wallets to unknown recipients. *Id.* ¶ 15. Fernandez alone has the necessary information to identify the sources and recipients of these funds, yet he has asserted his Fifth Amendment privilege against self-incrimination in response to the Commission's discovery on this topic and has refused to provide any information detailing or explaining these transactions. *See* Ex. B, Discovery Responses (Fernandez's responses to Request for Production No. 2 and Interrogatory No. 4). Without additional information from Fernandez, and because it is undisputed that at least some of the incoming crypto asset transfers were from investors, the Commission has reasonably assumed that the entirety of the incoming transfers ($4,144,064) came from investors. Ex. A, Warren Decl. ¶ 12. This is bolstered by the fact that Defendants appeared to have had no income during the relevant period apart from their fraudulent scheme. *Id.* Similarly, the Commission did not deduct any amount of the outgoing transfers ($2,868,667) from Defendants' crypto wallets to unidentified wallets because Fernandez has refused to provide any information that would identify these transfers as legitimate business expenses or payments back to investors. *Id.* ¶ 15. In addition, the information currently available to the SEC reveals that Fernandez otherwise transferred money

from Defendants' crypto asset accounts to family members or for personal purchases. *Id.* Thus, it is reasonable to assume that the outgoing transfers were not made to pay legitimate business expenses.

To the extent there is any uncertainty surrounding disgorgement, the risk falls on Defendants as the wrongdoers. *Patel*, 61 F.3d at 140. Furthermore, the Court may draw an adverse inference from Defendants' invocation of the Fifth Amendment and "consider such silence as a failure to dispute other evidence." *SEC v. Sethi Petroleum, LLC*, 229 F. Supp. 3d 524, 532 (E.D. Tex. 2017). The disgorgement amount cited above is therefore a reasonable approximation of Defendants' net ill-gotten gains under the circumstances.

Defendants should also be held jointly and severally liable for the disgorgement amount. "[J]oint and several liability is appropriate in securities cases where, as here, individuals collaborate or have close relationships in engaging in illegal conduct." *SEC v. Halek*, 537 Fed. App'x 576, 580 (5th Cir. 2013); *SEC v. United Energy Partners, Inc.*, 88 F. App'x. 744, 747 (5th Cir. 2004) (per curiam). For example, in *Halek,* the Commission's complaint (which, as here, was accepted as true for purposes of the disgorgement motion) alleged that an individual defendant owned and operated two defendant energy companies. 537 Fed. App'x at 581-82. The Fifth Circuit affirmed the district court's ruling, which held the defendants jointly and severally liable because the individual defendant had signing authority over the defendants' bank accounts, the investor funds were commingled among the accounts, and there was no basis for dividing the ill-gotten gains among defendants. *Id.*

Here, Fernandez owned and controlled both Avail Progression and Elite Generators. Based on a review of the companies' books, the SEC's accountant has determined that the funds were commingled in Defendants' bank accounts and that the companies acted as one economic unit. Ex.

A, Warren Decl. ¶ 13.  Funds paid to Elite Generators were used to pay investors in Avail Progression, and funds from Avail Progression were rolled over into the books of Elite Generators. *Id.*  Fernandez had authority over both companies' bank accounts and directed their daily activities and the disbursement of funds.  *Id.* ¶ 7.  Because the Defendants here acted as a single economic unit, they should be held jointly and severally liable for the disgorgement of ill-gotten gains. *Halek*, 537 Fed. App'x at 581-82.

The Defendants should likewise be ordered to pay prejudgment interest.  Defendants already agreed to pay prejudgment interest in their consents and were also ordered to pay the same in the Agreed Judgments.  *See* Doc. 15, Ex. A; Doc. 16, ¶ VI; Doc. 17, ¶ IV; Doc. 18, ¶ IV.  Per the Agreed Judgments, prejudgment interest "shall be calculated from October 31, 2021, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)."  Doc. 16, ¶ VI; Doc. 17, ¶ IV; Doc. 18, ¶ IV.  Courts add prejudgment interest to a disgorgement amount to prevent defendants from benefitting from the use of ill-gotten gains interest-free.  *SEC v. Gunn*, No. 3:08-CV-1013, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010).  The decision whether to award prejudgment interest is a matter left to the district court's discretion.  *United Energy Partners, Inc.*, 88 F. App'x at 747.

Here, Defendants wrongfully obtained illegal offering proceeds through their violations of the securities laws.  They then proceeded to use and benefit from those funds, at the expense of investors.  For Defendants to enjoy the benefits of their ill-gotten gains since then offends basic principles of justice and equity.  *SEC v. Greenview Inv. Partners, L.P.*, No. 3:18-CV-2349-G, 2020 WL 973750, at *3 (N.D. Tex. Jan. 2, 2020).  Applying the IRS's underpayment rate to the principal disgorgement amount above ($5,002,383) for the period from October 31, 2021, to

May 31, 2025 results in prejudgment interest of $1,291,419.26 and a total disgorgement plus interest amount of $6,293,802.26.  Ex. A, Warren Decl. ¶ 17.

| Disgorgement + PJI | |
|---|---|
| Disgorgement | $ 5,002,383.00. |
| Interest | 1,291,419.26 |
| **Total** | $ 6,293,802.26 |

Figure 2, Total Disgorgement and PJI

**B.     The Court Should Impose a Third Tier Civil Penalty Against Fernandez.**

The Court is authorized to assess civil penalties by Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act, which establish an escalating, three-tier structure for securities violations depending upon the egregiousness of the defendant's conduct.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); *see also* 17 C.F.R. § 201.1001 (adjusting statutory civil penalty amounts for inflation).  Congress enacted these penalty provisions "to achieve the dual goals of punishment of the individual violator and deterrence of future violations."  *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998).  A civil penalty is necessary because "disgorgement . . . does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud . . ." and ". . . is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator."  *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996) (quoting H.R. Rep. No.101-616 (1990)).

The Court may impose a first-tier penalty for any violation of the Securities or Exchange Acts.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3).  No showing of *scienter* is needed for the first tier.  *Id.*  Second-tier penalties may be awarded upon a showing that the violation involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.*  Finally, a third-tier penalty may be imposed upon a finding that the defendant's violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory

requirement" and that "such violations directly or indirectly result in substantial losses or create a significant risk of substantial losses to other persons." *Id.* Under both Acts, the maximum penalty that can be awarded is the greater of the gross amount of pecuniary gain or the amount set by statute. *Id.*

Although the statutory tier determines the maximum penalty allowed *per violation*, the actual amount of the penalty to be imposed is left to the Court's discretion. *See SEC v. Kern*, 425 F.3d 143, 153 (2nd Cir. 2005); *SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009). In determining the appropriate penalty, the Court should consider: (1) the, egregiousness of the defendant's conduct; (2) the degree of the defendant's *scienter*; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *Helms*, 2015 WL 5010298, at *21 (quoting *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at *3 (N.D. Tex. Apr. 5, 2012)).

Applying the factors noted above, a third-tier penalty is appropriate as to Fernandez.[2] Fernandez's conduct was egregious. For nearly five years, he knowingly or recklessly misled investor victims, falsely representing that their money would be used to invest in forex markets for a guaranteed return. Doc. 1, Compl. ¶¶ 13, 19, 21. Instead of investing, however, Defendants—at Fernandez's behest—misappropriated investor funds and diverted them to pay for Fernandez's personal expenses and to make Ponzi payments. *Id.* ¶¶ 14, 23. Fernandez acted

---

[2] The SEC does not seek penalties against Elite Generators or Avail Progression because both companies appear to have forfeited their existence and do not appear to have current operations. The SEC still seeks disgorgement jointly and severally against all Defendants, however, in case recoverable assets or funds are held in the names of Avail Progression or Elite Generators.

with a high degree of scienter as he actively deceived investors about Defendants' use of the funds, sending fabricated screenshots of trading trackers, making various misrepresentations and omissions, and covering up shortfalls with Ponzi payments and a litany of excuses. *Id.* ¶¶ 14-17, 21, 23-25. Furthermore, after spending all of the investor funds in Avail Progression, Fernandez perpetuated the fraudulent scheme by establishing Elite Generators and soliciting new investments, relying on the same claims and touting his past "success" to lure new investors. *Id.* ¶¶ 17, 19. This conduct resulted in substantial losses to investors, totaling nearly $9 million during the relevant time period. Ex. A, Warren Decl. ¶¶ 10, 12, 14. Defendants' conduct was recurrent over nearly five years, including repeated false and misleading statements to investors; the systematic misappropriation of investor funds; lulling investors with Ponzi payments to keep the scheme going; and numerous violations of the federal securities laws. Doc. 1, Compl. ¶¶ 12-25. Each of these factors weighs in favor of a significant third-tier penalty.[3]

The SEC requests that the Court impose a statutory civil penalty of $472,902 against Fernandez, which is equal to two times the maximum third-tier civil penalty permitted by statute against an individual *per violation*. 17 C.F.R. § 201.1001; *see also* SEC, Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2025) (last visited July 31, 2025), https://www.sec.gov/enforce/civil-penalties-inflation-adjustments. This penalty amount is appropriate because Fernandez's conduct warrants a third-tier penalty, and he committed at least two violations of the securities laws. He specifically engaged in two separate but comparable frauds (first with Avail Progression and then with Elite Generators) that resulted in substantial losses to others. *See SEC v. McClintock*,

---

[3] The SEC has no current information regarding the Defendants' financial condition and is thus not able to evaluate the fifth factor.

No. 1:12-CV-04028-SCJ, 2015 WL 12696101, at *3 (N.D. Ga. Oct. 28, 2015) (imposing two maximum third-tier statutory penalties against each defendant based on two separate violations of securities law). He also violated two antifraud statutes. *See SEC v. Star Chain, Inc.*, No. 1:21-CV-03944-JPB, 2023 WL 1785764, at *4 (N.D. Ga. Feb. 3, 2023) (imposing two maximum third-tier statutory penalties and reasoning: "[b]ecause Defendants violated two statutes [i.e., Section 17(a) of the Securities Act Act of 1933 ("Securities Act") and Section 10(b) of the Exchange Act], doubling the civil penalty is appropriate in this case"). Moreover, the requested penalties will serve to uphold the aims of the federal securities laws by punishing Fernandez for his egregious misconduct and deterring future harm to investors.

### C. Plaintiff Requests That the Court Enter the Proposed Final Judgment against Defendants.

Plaintiff requests that the Court enter the proposed Final Judgment, attached hereto, incorporating the previously agreed-upon and entered relief in the Agreed Judgments and setting the amount of disgorgement, pre-judgment interest, and civil penalties.

### IV.
### CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court: grant this motion, enter the proposed Final Judgment attached hereto as Exhibit C, and grant the SEC such further relief as to which it may be entitled.

Dated: August 20, 2025                     Respectfully submitted,

                                           UNITED STATES SECURITIES AND
                                           EXCHANGE COMMISSION

                                           */s/ Tyson M. Lies*
                                           Matthew J. Gulde
                                           Illinois Bar No. 6272325

S.D. Texas Bar No. 1821299
Tyson M. Lies
Texas Bar No. 24087927
S.D. Texas Bar No. 3865116
Jillian Harris
Texas Bar No. 24087671
S.D. Texas Bar No. 2669497
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  (817) 978-1410
Facsimile:  (817) 978-4927
guldem@sec.gov
liest@sec.gov
harrisji@sec.gov

## **CERTIFICATE OF CONFERENCE**

I affirm that on August 18 and 19, 2025, I communicated with counsel for Defendants. Counsel indicated that she was trying to connect with her clients, but was never able to confirm their opposition to the relief requested within this motion.  This motion is therefore presumptively opposed.

>*/s/Tyson M. Lies*
>Tyson M. Lies

## **CERTIFICATE OF SERVICE**

I affirm that on August 20, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court for the Southern District of Texas, Houston Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

>*/s/Tyson M. Lies*
>Tyson M. Lies